JOHN W. ROSE ET AL., EXECUTORS v. THE SAN ANTONIO AND MEXICAN GULF RAILROAD COMPANY.

A promise to pay a railroad company a sum of money when it shall have constructed the road from L. to V., and kept the same in operation, conveying passengers and freight between said points for the period of one year, is for a valuable consideration and binding.

The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does, or begins to do, the thing which is the condition of the first promise. Until such engagement or such doing the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation. So, if the promisee begin to do the thing in a way which binds him to complete it, here also is a mutuality of obligation. But if without any promise whatever the promisee does the thing required, then the promisor is bound on another ground. The thing done is itself a sufficient and a completed consideration, and the original promise, to do something if the other party would do something, is a continuing promise until the other party does the thing required of him. (1 Pars. on Cont., book II, chap. 1, sec 9., pp. 375, 376, ed. of 1857.)

If the benefit accrue to him who makes the promise, or if any loss or disadvantage accrue to him to whom it is made, at the request or on motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit. (Paschal's Dig., Art. 220, Notes 283, 290.)

Where the cause of action accrues upon the performance by the payee, the statute of limitation did not run until the completion of such condition. (Paschal's Dig., Art. 4604, Note 1017.)

Where there was an exception to excluding the deposition of a certain witness, the bill of exceptions must show the materiality of the evidence. (Paschal's Dig., Art. 217, Note 280.)

It is doubtful whether a defendant can plead in reconvention a trespass, by

xxxi—4

the plaintiff, upon his land against an action of debt. (Paschal's Dig., Art. 3446, Note 797.)

A plea in reconvention must show a good cause of action against the plaintiff. (Paschal's Dig., Art. 217, Note 280.)

Appeal from Victoria. The case was tried before Hon. J. J. Holt, one of the district judges.

The history of the enterprise is given in the case of this road against Jones, 28 Tex., 20.

This was a suit brought by the appellees against the appellants upon the following note:

"For value received I promise to pay to the order of the San Antonio and Mexican Gulf Railroad Company the sum of one thousand dollars, when said company or their assigns shall have constructed said road from the city of Lavaca to the town of Victoria and kept the same in operation, conveying passengers and freight between said points, for the period of one year. This 7th day of March, A. D. 1860.                        "P. R. Rose."

The petition alleged the construction of the road and the keeping of the same in operation for one year in accordance with the condition of the note.

The defendants demurred to the petition, assigning as special exceptions: 1st. That there was no mutuality of consideration. 2d. That the building of the railroad did not form a valuable consideration for the note. The court overruled the demurrer, and the defendants excepted. They presented the same points, in substance, in the instructions they asked the court to give the jury, which were refused, and in their motion for a new trial, which was overruled; and, verdict and judgment having been rendered against them, they appealed and sought a reversal of the judgment, mainly upon the ground that the court erred in those rulings; that is to say, erred in holding that the building and running of the road in accordance with the condition of the note constituted a sufficient consideration to make it binding upon the maker.

The defendant also pleaded in reconvention that somebody had got ties off his land for the road, but there was no averment that it was with the authority of the company; and, the whole defense being held by the court to be untenable, the reader is referred to the opinion of the court for the character of that plea.

*A. B. Peticolas*, for appellants.—I. There is a general demurrer, that puts in issue the sufficiency of the petition.

We contend that the petition and amendments are insufficient to support this action, because there is no allegation that the corporation, at the time the suit was brought, had, besides the president, the twelve other directors required by their charter, nor are their names given. (Act of September 5, 1850, 3d Leg., Act of Incorporation, Special Laws.)

But here a preliminary question arises: Can the court take judicial notice of the existence of this highway, and examine the laws to refresh its memory? It can. (1 Greenl. on Ev., § 6; 1 Starkie on Ev., 7th Am. ed., 231, and note *g*.) Under my view of the laws, the want of the allegation of the existence of a board of directors in the petition was an error in the substance, and not merely in the form, of the petition. The corporate capacity to sue was directly in issue under the general denial. (Holliday v. Memphis and El Paso Railway, 23 Tex., 465, and authorities there cited.)

Chief Justice MARSHALL, in the case of Dartmouth College v. Woodward, 4 Wheaton, 636, says that a corporation, " being a mere creature of law, possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it is created. Amongst the most important are immortality and (if I may be allowed the expression) individuality, properties by which a perpetual succession of

many persons are considered as the same, and may act as a single individual."

[The counsel here reviewed the charter and amendments.]

II. The second objection under general demurrer is, that there is no allegation that plaintiffs built the road, relying upon and in consideration of the promise of defendants, and expended money and materials upon the faith of the promise. This allegation was absolutely necessary to entitle plaintiffs to recover. (Hopkins v. Upshur, 20 Tex., 92; Aug. & Ames on Corp., § 527; Union Turnpike Company v. Jenkins, 1 Caine, 381.)

III. We come now to the special exceptions:

There was no mutuality of consideration.

The building of the road, as set out in the petition, does not form a good consideration for the making and delivery of said note, and, inasmuch as these exceptions raise the same questions that are raised by instructions asked by defendants, they will be considered together.

1st. There is an axiom of the law that a promise without consideration is void. (1 Pars. on Cont., 5th ed., 427.)

To a contract there must be a mutual obligation, an obligation that binds both parties. There is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense. (1 Pars. on Cont., 5th ed., 475, note *a;* Pierce on Am. R. R. Law, 360, 367, 368.) "Absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement." (1 Pars. on Cont., 449, note *a.*)

There was, then, no mutuality of consideration or obligation. While Rose was bound, the company was free to build or not, as they saw proper; and, under plaintiffs construction, this continuing offer by defendants would have been good for twenty years, (there being no limitation law opposed,) and if on the twenty-first year the company had built the road, they could sue for and recover the debt upon

proof of condition fulfilled.   The court is particularly referred on this point to the case of Utica and Schenectady Railway v. Brinkirhoff, 2 Am. R. R. Cases, 481.   NELSON, J., in delivering the opinion of the court, says: "The difficulty in sustaining this action is that no consideration appears for the undertaking of the defendants.   The written instrument is but a simple proposition, and no averment that it was acceded to by plaintiff.   The fact that they afterwards located the road agreeably to the terms is in itself nothing. It should have appeared that they agreed with defendants thus to locate it as a consideration for the promise."   This case was decided on demurrer, and is directly in point on the facts alleged.   (Lees v. Whitcomb, 5 Bing., 34; Sykes v. Dixon, S. C., 1 Per. & D., 463; Bates v. Cook, 3 Dow and R., 676; James v. Williams, 5 B. & Ad., 1109; Pierce's R. R. Law, 562; Governor and Miners v. Fox, S. C., 16; Q. B., 239.)

The note in this case is not declared upon as a subscription, and even as such could not be sustained. (1 Pars. on Cont., 452; Hamilton College v. Stewart, 1 Coms., 581.)

IV. The second exception is, that the building of the road is not a good consideration for the making of the note.   By the terms of the act of incorporation of September 5, 1850, section 2, the road was to be built to commence on the gulf coast, between Galveston and Corpus Christi; and run to or near San Antonio, by act of 14th November, 1857, (7 Leg., special laws, sec. 8.)   The town of Lavaca was made the eastern terminus of said road by same act, section 2; twenty-five miles were to be completed by 1st, January, 1860, or the company forfeit all their privileges, and the charter become null and void.   This was the penalty attached, and section 6 provides pay to them of sixteen sections of land for every mile built.   They were working for large pay, and were under a legal obligation to build the road.   In this suit they contend that they built the road, not for those reasons at all, but because this note was given, and they set up as a consideration here the very act they

were compelled to perform or forfeit their charter. It is believed to be a settled principle of law, that the performance of that which the party was under a previous valid legal obligation to do is not a good consideration. (1 Pars. on Cont., 5th ed., 437, &c., generally; L'Amoreaux v. Gold, 3 Seld., 349; Harris v. Watson, Peak Cases, 72; Crowhurst v. Laverack, 13 E. L. & E., 497; Smith v. Bartholomew, 1 Metc., 276; Sweany v. Hunter, 1 Murphy, 181; Collin v. Godfrey, 1 B. & Ad., 950.)

V. But it is not conceded that the note is a contract with a condition. "When" is, strictly speaking, an adverb of time, and does not mean the same as "if," which is a word importing a condition. The note is a promise to *give* at a certain date. When the railroad company has constructed a road to Victoria, and kept the same in running order one year, conveying freight and passengers, then the donation was to be made, and until actually made the promise to give was revocable. (Ang. & Ames on Corp., §§ 526, 527.) As a donation it cannot be sustained, (1 Tex., 161; 6 Tex., 45,) there being no delivery. In the case of the trustees of Limerick Academy v. Davis, 11 Mass., 113, the court held that there could be no recovery on an obligation in these words: "Impressed with a sense of the advantages arising from free schools, we, the subscribers, agree to pay or cause to be paid the several sums affixed to our names, in money or materials, for erecting an academy in Limerick on such lands as may be given by any subscriber and adjudged most convenient and central by a majority of the subscribers."

See also upon the question of consideration and donation Boutelle v. Cowden, 9 Mass., 254; Bridgewater Academy v. Gilbert, 2 Pick., 579; Coke v. Oxley, 3 Term, 653; Lamoreux v. Gold, 3 Seld., 349; New Bedford and Brunswick Turnpike Company v. Adams, 8 Mass., 138; Amherst Academy v. Cowles, 6 Pick, 434; Scott's Charitable Society v. Shaw, 8 Mass., 532; Bluehill Academy v. Wilthaur, 13

Maine, 403; Union Turnpike Company v. Jenkins, 1 Caine, 381.

VI. There is another question which arises under the second exception. If we admit that the note was given in consideration of the building of the road, as set out upon the face of the note, the question of public policy is raised. (Butternuts and Oxford Turnpike v. North, 1 Hill, 518; Macedon and B. Plank Road v. Snediker, 18 Barb., 317.)

*Glass & Callender*, for appellees.—I. If the note were regarded as a voluntary subscription, which might have been revoked at any time before the railroad company had expended money and labor in fulfilling the condition upon which it was poised, it is the well-settled law, affirmed in repeated decisions of this court, that such a subscription becomes binding after any such expenditure of labor or money has been made. (Hopkins v. Upshur, 20 Tex., 89; Doyle v. Glasscock, 24 Tex., 200; McCrimmin v. Cooper, 27 Tex., 113.)

II. But we take it that the real character of the obligation sued upon in this case is that of a conditional promise, which became binding whenever the condition was performed.

We understand the note to be a promise by P. R. Rose to pay the company the sum of $1,000, upon condition that they should construct and run the road according to the terms of the note, and to pay when this condition should be performed. Any other construction would do manifest violence to the intention of the parties, as well as to the language of the obligation. The road was not constructed at the time the note was given. The maker of the note was a resident of the county, to the county seat of which the road was to be made. The object in giving the note could only have been to induce the construction of the road to the point named, and the motive was, no doubt, the benefit which Rose, as a member of the community,

expected to derive from its construction. For this reason he promised to pay only upon condition that the road should be built (or "when" it should be built) and kept in operation one year. To say that the promise is not upon condition, because the word "when" is used instead of the word "if," is trivial. It is every-day practice, in ordinary life, for men to make conditional promises by the use of that same word; as the owner of a lost horse promises to pay a reward "when" the horse is found and restored to him. "No precise words are necessary to constitute a condition." "The decision must always depend upon the intention of the parties, to be collected in each particular case from the terms of the agreement itself and from the subject-matter to which it relates." (1 Pars. on Cont., 39.) See also the cases of O'Neal v. King, 3 Jones, 517; and cited also in Redfield on Railways, p. 80, in which a bond for a railroad subscription, payable "when" the road was completed to a certain village, was held to be conditional, and that the condition was performed, and the subscription payable when the road was made to the suburbs, &c. (Pars. on Cont., book II, chap. 1, § 9, pp. 375, 376, ed. of 1857.)

This doctrine has been applied, in numerous adjudged cases, to obligations similar to the one here sued on. Mr. Pierce, in his American Railroad Law, p. 71, remarks, that "In Indiana and Pennsylvania promises to pay the company a certain sum of money on condition that it will adopt a certain route have been held valid, and enforced after the condition has been performed. They have also been recognized as valid in Massachusetts and Ohio." In support of this position the author cites the cases of Carlisle v. Terre Haute and Richmond Railroad Company, 6 Ind., 316; Fisher v. Evansville and Crawfordsville Railroad Company, 7 Ind., 407; Cumberland Railroad Company v. Baab, 9 Watts, 458; Rhey v. Ebensburg and Susquehanna Plank Road Company, 27 Pa., 261; Central Turnpike Corporation v. Valentine, 10 Pick., 142; Troy and Green Railroad Com-

pany v. Newton, 1 Gray, 544; Chapman v. Mad River and Lake Erie Railroad Company, 5 Ohio.

Of these cases, the one most directly in point, perhaps, is that of the Cumberland Railroad Company v. Baab, reported also in 2 American Railway Cases, p. 187. There the defendant, Baab and others, respectively promised to pay certain sums of money to the company "if the company will locate their valley railroad bridge across the river opposite to Mulberry street, Harrisburg." The condition having been fulfilled by the building of the bridge at the designated point, and the defendant having refused to pay the amount promised, suit was brought to enforce it. The court below was of opinion that the contract was against public policy, and without consideration in law, and directed the jury to find for the defendant. Upon writ of error, the supreme court of Pennsylvania, in an able opinion delivered by Chief Justice GIBSON, held that the contract was not contrary to public policy, and that, the condition having been fulfilled, the promise was valid and binding, and might be enforced by action. The other cases cited maintain the same doctrine.

Subscriptions to the stock of a railroad company, upon condition that the road shall be located upon a certain line, or extended to a certain place, are so analogous to such obligations as the one sued upon in the case at bar, that both are necessarily governed by the same principles, and must stand or fall together. "Excepting New York, (says Mr. Pierce, in his American Railroad Law, 70,) these conditional subscriptions, in the absence of special prohibitions, have been sustained, as authorized and not in conflict with public policy."

In the case of The Henderson and Nashville Railway Company v. Leavell, 16 B. Monr., 358, it was held by the court of appeals of Kentucky, that a subscription to the stock of a railway, conditioned that the road should pass through a certain town, and the money subscribed be ex-

pended in a certain county, was a valid subscription. The court, per Simpson, J., said: "The stock in this case is not conditional, although the defendant has, in the act of subscribing for it, brought the company under certain obligations to him in relation to it with which they are bound to comply. Such stipulations are not incompatible with sound policy or with any of the provisions of the charter. They do not render the subscription void, but operate, as it was intended they should, for the benefit of the stockholder. But even if the subscription had been made upon the express condition that the money should not be paid until certain acts were done by the company, when these acts were done the stock would then be unconditional, and the subscribers would then be compelled to pay it, as was held in McMillan v. Maysville and Lexington Railroad Company, 15 B. Monr., 218." In the case last mentioned it was held by the same court that the stock subscribed was to be the means by which the road should be constructed, and hence a subscription for stock, on condition that this road should be so "located and constructed as to make the town of Carlisle a point," imposed upon the subscribers the duty to pay, upon the location of the road in that place, and that the construction of the road was not a condition precedent to the right to recover for calls on the stock. (15 B. Monr., 218.)

Morrill, C. J.—The question presented for our decision in this case is, whether an action can be sustained on the instrument given by appellant, as follows:

"For value received, I promise to pay to the order of the San Antonio and Mexican Gulf Railroad Company the sum of $1,000, when said company or their assigns shall have constructed said road from the city of Lavaca to the town of Victoria, and kept the same in operation, conveying passengers and freight between said points, on the period of one year: this 7th day of March, A. D. 1860."

P. R. Rose.

· It is admitted or proved that the conditions upon the happening of which the note became payable have taken place, and the defenses set up to paying the same are—

1. Want of mutuality in the contract.

2. The building said road does not form a valuable consideration for said note.

3. The act of limitation.

4. Reconvention.

In addition to the defense set up in pleadings, the briefs of counsel have dwelt somewhat on the illegality of the instrument, alleging that it is contrary to public policy. Concerning this objection, if there is any one subject upon which there has been unanimity in the legislation of the state, not for one session only, but during our existence as a state, it is the making railroads from any point to any other point in the state, and the state has expressed its approval of the erection of said roads by making liberal donations to all. But as this objection is not raised by the pleadings, we take up, in the order stated, the several objections, and first the want of mutuality of the instrument. It is pronounced that the defense intended is, that inasmuch as the railroad company is under no obligations to make the road, therefore the maker of the instrument should not be bound to pay when the same is made. This subject has been very ably and lucidly discussed by Parsons, in his Work on Contracts, (vol. 1, 375,) as follows:

"Here it is said that the party making the promise is bound, while the other party is at liberty to do any thing or nothing. But this is a mistake. The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the beginning of the first promise; until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee, which is sufficient to bind him,

then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation. But if, without any promise whatever, the promisee does the thing required, then the promisor is bound on another ground. The thing done is itself a sufficient and completed consideration, and the original promise to do something if the other party would do something is a continuing promise, until that other party does the thing required of him."

The doctrine thus laid down by Professor Parsons is fortified by authority quoted in a note to the above, that "the binding obligation of contracts or promises to do something, provided, or on condition, or when the other party shall do some other thing, is well recognized." As the answer does not state that Rose either withdrew or attempted to withdraw the promise till after the promisees had complied with the conditions of payment of the same, the demurrer to the same was properly sustained.

The second defense is want of consideration. The authority already cited is deemed amply sufficient in reply to this defense. Indeed it may be stated as among the elementary principles and maxims of law, "that if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, at the request or on motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit."

In the construction of a railroad there was not only a benefit to the promisor, but to the community at large, to say nothing of the pecuniary loss and expense to him by whom the road was made.

In relation to the defense set up by the act of limitation, it is nowhere contended that the road was made more than four years before suit was brought, and therefore the defense is groundless.

The only remaining defense is, that the judge erred in excluding the deposition of Mrs. Lewis. What the depo-

sition of Mrs. Lewis was does not appear in such a way as would authorize the court to take any notice of the same; but the answer of the defendant is demurrable, and even if the deposition of Mrs. Lewis had substantiated the entire defense, it would have been of no avail. The answer does not allege that the plaintiffs ever became liable to pay for the timber cut on defendant's land, but that "certain persons, W. J. Barry, —— Greenwood, and others, acting under and by authority, made entry into the timbered lands of defendant, and for the use and benefit of said road cut down and carried away two thousand ties, worth $1,000." Who the said Barry and Greenwood and others were, or by whose authority they committed a trespass upon the land of defendant, is not made known; and even if it had been properly pleaded that this trespass had been committed by authority of the railroad company, as the damages were unliquidated or uncertain, it might be considered very doubtful if it would lie in this case. As the plea is presented it forms no defense. We see no error in the judgment, and the same is

AFFIRMED.